## AMERICAN LIVE STOCK COMMISSION CO. et al. v. UNITED STATES.

District Court, W. D. Oklahoma. July 28, 1928.

No. 704.

Fred E. Suits and C. E. Hall, both of Oklahoma City, Okl., for plaintiffs.

William J. Donovan, Assistant to the Atty. Gen., H. B. Teegarden, Sp. Asst. Atty. Gen., and Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl.

Before KENYON, Circuit Judge, and WILLIAMS and COTTERAL, District Judges.

COTTERAL, District Judge. The plaintiffs sue as "market agencies" and "dealers" for an injunction against the enforcement of an order of the Secretary of Agriculture, made upon findings, after complaint, notice, and a full hearing, at which evidence was taken, under title 3, of the Packers and Stockyards Act (42 Stat. 159 [7 USCA §§ 201–217]). By the order, they were required to cease and desist individually and by concerted action from engaging in and using unfair and unjustly discriminatory practices or devices in connection with the buying and selling of live stock, as defined in the act, at the Oklahoma City National Stockyards, at Oklahoma City, Okl., by failing and refusing to buy live stock from and sell live stock to the Producers' Commission Association and the Bollinger & Spencer Live Stock Commission Company.

It appears that the latter company had, before the departmental hearing, been dis-

solved and ceased to transact business at those yards, and by concession of counsel for the United States the order, so far as it affects that company, should be enjoined. It is further conceded that the order cannot be sustained against the individual acts of the plaintiffs.

The Secretary of Agriculture found that the said stockyard was a public stockyard market, as defined in title 2, of the Act (7 USCA §§ 191–195); that certain of the plaintiffs were "market agencies," registered under the act and engaged in buying and selling live stock, and others of them were "dealers," registered and engaged in buying and selling live stock on their own account, or as the agents or employees of the vendors or purchasers, at said yard; that it was essential to maintain there a free, open, and competitive live stock market, and any interference therewith depressed the prices of live stock, to the prejudice and disadvantage of the sellers thereof, and restricted interstate commerce.

The Secretary further found that the plaintiffs were engaged individually and in concert in unfair and unjustly discriminatory practices or devices in the handling, buying, or selling of live stock at said yards, as defined in title 3, § 312, of the act (7 USCA § 213), and, while freely buying and selling live stock in commerce at said yards among themselves, persistently refrained from and refused handling, buying, or selling live stock there from the Producers' Commission Association, a co-operative market agency, duly registered and qualified to transact business, and continue to do so, thereby unjustly and unfairly discriminating against the association, until it ceased to do business on or about March 11, 1925, to its prejudice and disadvantage.

We shall briefly express our views upon the grounds of complaint against the order which appear to us to merit consideration. The first of these we notice is that the Packers and Stockyards Act (7 USCA § 181 et seq.) did not prohibit the plaintiffs, assuming they acted in concert, from dealing with whom they pleased. Counsel rely upon the cases of Hopkins v. U. S., 171 U. S. 578, 19 S. Ct. 40, 43 L. Ed. 290 and Anderson v. U. S., 171 U. S. 604, 19 S. Ct. 50, 43 L. Ed. 300. No claim is made in the bill or otherwise that the transactions did not occur in interstate commerce. And to show those cases were based on different facts and are inapplicable, it is only necessary to refer to the case of Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229, upholding the validity of the act, where it was said, at page 525 (42 S. Ct. 405):

"Again, if the result of the combination of commission men in the Hopkins Case had been to impose exorbitant charges on the passage of the live stock through the stockyards from one state to another, the case would have been different, as the court suggests. The effect on interstate commerce in such a case would have been direct. Similarly, in the Anderson Case, if the combination of dealers had been directed to collusion with the commission men to secure sales at unduly low prices to the dealers and to double commissions, or to practice any other fraud or oppression calculated to decrease the price received by the shipper and increase the price to the purchaser in the passage of live stock through the stockyards in interstate commerce, this would have been a direct burden on such commerce and within the Anti-Trust Act [15 USCA §§ 1–7, 15]."

The plaintiffs further claim there is no sufficient legal evidence to support the adverse findings of the Secretary. The transcript of the evidence being voluminous, counsel on both sides, assumed at the hearing, for the convenience of the court, to point out in their briefs those portions of it deemed to bear on the subject.

The Secretary was authorized to ascertain the facts, as a basis for an appropriate order. When a department has that authority, then by general rule its findings of fact upon the evidence taken at a hearing are conclusive, but questions of law are open to review by the courts. The particular jurisdiction of this court over the action of the Secretary of Agriculture is the same as in case of a suit to enjoin an order of the Interstate Commerce Commission. Section 316, Packers and Stockyards Act (7 USCA § 217). Section 208, Judicial Code (28 USCA § 46). His findings are prima facie correct; and the pertinent inquiry with regard to the findings of fact is whether they are based on substantial evidence, which is a question of law. Int. Com. Com'n v. Union Pac. R. R., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308; Virginian Ry. v. U. S., 272 U. S. 658, 47 S. Ct. 222, 71 L. Ed. 463. Conceding to these parties the right to deal at will separately, their acts done in concert, if they amounted to a boycott against lawful trading in live stock by the Producers' Commission Association, would take on the form of a conspiracy, and

become a public wrong. Eastern States Lumber Ass'n v. U. S., 234 U. S. 600, 34 S. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; Montague v. Lowry, 193 U. S. 36, 24 S. Ct. 307, 48 L. Ed. 608; Binderup v. Pathé Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308.

■■ We are satisfied there was substantial evidence to support the findings of the Secretary. The acts of the plaintiffs and the circumstances were amply sufficient to show the plaintiffs had combined to boycott the association and make that object effective by their concerted action. The evidence of the combination or conspiracy was circumstantial. But it was not essential to prove a formal or explicit agreement. It might be inferred from the acts that were done. Eastern States Lumber Ass'n v. U. S., supra. Also we find there was sufficient legal evidence to support the findings of the Secretary that was not open to the technical objections of the plaintiffs, and the criticisms made upon the credibility of the witnesses and the force of their testimony can be regarded only as raising questions of fact, which are foreclosed by the findings of the Secretary.

But the plaintiffs complain of the order in this case on the ground that the association was not authorized within its corporate powers to buy and sell the live stock at this yard, and hence they were not obligated to deal with or recognize it or subject to this coercive order, respecting the transactions in question. We think their position is well taken, and that it must be immaterial on what ground they seek to justify their conduct, so long as they were within their rights.

We may conceive of a co-operative association transacting the business of buying and selling live stock for the mutual interest of its stockholders or members, and as such entitled to register with the Secretary as a "market agency," or "dealer." But we must look to the powers of this association under the Oklahoma state law to determine whether it might engage in such business and thereby be entitled to the benefit of the act of Congress.

It appears that the association was organized under chapter 181, Oklahoma Session Laws 1923, where its charter powers are defined. It is there provided that any number of persons not less than five, engaged in the production of agricultural or horticultural products, may act together and organize a co-operative association, not having capital stock and not conducted for profit, for mutual help, in collectively possessing, handling, shipping, and marketing such products of persons so engaged, etc. Various other provisions are added to facilitate the objects specified, such as the buying of machinery and supplies, acquiring and disposing of the property of the members, contracting and acting with other co-operative associations, enjoying incidental powers. There are other details, but they need not be enumerated, except section 11, which reads:

"No association organized hereunder shall handle the agricultural or horticultural product of any nonmember except for storage."

■■ The general rule is that a corporation has only such powers as are conferred by law and others necessarily incident to the proper exercise of its express powers. Myatt v. Ponca Land & Imp. Co., 14 Okl. 189, 78 P. 185, 68 L. R. A. 810; 14a C. J. 252. All other powers are excluded. 14a C. J. 269. It is clear that this association was authorized only to buy and sell live stock of its members. Any other transactions were outside of its express and incidental powers. No testimony has been pointed out as to the transactions of the association, except that its manager and salesman bought and sold live stock at the yard, and none that they sold live stock of the members of the association. It was incumbent on the government to show its right to engage in these transactions.

■■ Where the state Legislature has seen fit to thus limit the powers of an organization, the buying or selling of live stock of others by it at the stockyards were acts that were ultra vires, or, more accurately stated, wholly illegal in character. It is to be said that, even if the plaintiffs had contracted with this association, and the contracts were executory, they could not be enforced. 2 R. C. L. p. 675. 1 Clark & Marshall, Priv. Corporations, § 213. The plaintiffs, therefore, not only had no duty to recognize the agents of the association, but it was their absolute right to refrain from dealing with them. The Packers and Stockyards Act does not confer corporate rights or powers upon any corporation, but grants to persons only the privileges and protection there specified, assuming they have the right to engage in the transactions. Its protection is extended to an incorporated company only when acting within the powers derived from its charter, and

certainly not, if it seeks to engage in dealings forbidden by state law.

The answer to this is that, both by the principles of the common law and a state statute declaratory thereof, found in section 5293, Comp. St. 1921, this defense is not available to the plaintiffs. That section is as follows:

"The due incorporation of any company, claiming in good faith, to be a corporation under this chapter and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such de facto corporation may be a party; but such inquiry may be had, and action brought, at the suit of the state, in the manner prescribed in civil procedure."

We do not find any such principles that are applicable, or that the statute applies to this case. The question does not arise in any suit between these parties. It is not a case where property has been acquired in excess of corporate powers, or where the parties have so dealt with each other that one of them is disabled to plead a want of corporate power to act. Instead, it is one where the dealing with a corporation has been declined by the plaintiffs. For this reason, it is our opinion that the plaintiffs were free to refuse to deal with the Association. See Central Transportation Co. v. Pullman, 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; 1 Clark & Marshall, Priv. Corporations, § 213; Hummel v. Warren Steel Casting Co. (C. C. A.) 5 F. (2d) 451.

Not doubting in the least that competitive trading and co-operative marketing are valuable to industry and agriculture, as contended by the able counsel for the government, our conclusion is that the advantages of the Packers and Stockyards Act were not extended to the Producers' Commission Association, for the purpose of buying or selling live stock of others, and that the order of the Secretary of Agriculture as to it should not have been made for that reason, as a matter of law; and, being concededly invalid as to the Bollinger and Spencer Live Stock Commission Company, and no other relief being deemed adequate, the enforcement of the order should be enjoined by this court.

It will be so decreed in this case.

WILLIAMS, District Judge (concurring). Section 2, chapter 181, page 309, Session Laws 1923, amending Act June 14, 1917 (see chapter 34, art. 16, Okl. Compiled Statutes 1921, and Session Laws 1917, § 11), under which the Producers' Commission Association is organized, relates to co-operative agricultural and horticultural associations, organized without any capital stock and not to be conducted for profit. The Legislature of 1919 provided for co-operative corporations, with limitations as to capital stock and voting powers of stockholders, to engage in an agricultural, dairy, live stock, irrigation, horticultural, mercantile, manufacturing, mechanical, or industrial business, same to be operated on a co-operative plan (see Session Laws 1919, p. 211; Oklahoma Compiled Laws 1921, c. 34, art. 19), and are permitted to deal with and for nonmembers (see paragraph 3, § 5648, Okl. Comp. Laws 1921). As I construe the opinion prepared by Judge COTTERAL, had the Producers' Commission Association been organized under the act of 1919, the plaintiff would not be entitled to the injunctive relief which is herein awarded, and I therefore concur in his opinion.

KENYON, Circuit Judge (concurring). I concur in the opinion of Judge COTTERAL, as it seems clear that the Producers' Commission Association, by virtue of its incorporation under chapter 181, Okl. Session Laws of 1923, secured authority only to buy and sell the live stock of its members. I am in agreement with the suggestion of Judge WILLIAMS in his concurring opinion that, had the Producers' Association been incorporated under the act of 1919, referred to by him, plaintiff would not be entitled to the relief we are granting.