UNITED STATES *v.* AMERICAN LIVESTOCK COMMISSION COMPANY ET AL.

No. 513. Argued March 5, 1929.—Decided May 20, 1929.

*Attorney General Mitchell,* with whom *Assistant to the Attorney General Donovan* and *Mr. H. B. Teegarden,* Special Assistant to the Attorney General, were on the brief, for the United States.

*Mr. C. E. Hall,* with whom *Mr. Fred E. Suits* was on the brief, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a proceeding under the Packers & Stockyards Act, 1921, Act of August 15, 1921, c. 64, § 316, 42 Stat. 159, 168. U. S. Code, Title 7, § 217. The American Livestock Association and others seek an injunction against the carrying out of an order of the Secretary of Agriculture requiring them to discontinue a boycott by which they refused dealings with the Producers Commission Association at the Oklahoma National Stock Yards. A District Court of three judges granted the injunction. 28 F. (2d) 63. The United States appealed.

The Secretary found the existence of the boycott, the persistent refusal to buy or sell live stock from or to the Producers Commission Association, and that the American Livestock Association and its fellow conspirators thereby restrained commerce and discriminated unfairly against the Producers Commission Association contrary

to the statute. The appellees urge that there is nothing to prevent their dealing or refusing to deal with whom they choose. But we think that it does not need argument to show that a boycott of a dealer in a stockyard may be an unfair practice under the Act as it is found to have been in this case. *Eastern States Retail Lumber Dealers' Association* v. *United States,* 234 U. S. 600. We pass at once to the only real question in debate.

The Producers Commission Association is a coöperative association for mutual help under the laws of Oklahoma and is forbidden to "handle the agricultural or horticultural product of any non-member except for storage." It is agreed that "the record contains no evidence as to whether the live stock which the Producers Commission Association bought or sold or attempted to buy or sell upon the Oklahoma City Stockyards was or was not the live stock of its members." It is said so far as appears all the sales were *ultra vires* and that the appellees should not be enjoined from refusing to coöperate in an illegal act. But apart from the presumption that the corporation was acting only within its powers and from the burden resting on the doer of a *prima facie* illegal act, the boycott, to justify it, we agree with the Government that it would be absurd to suppose that a coöperative society organized for the special purpose of aiding its members should confine its business to the illegal sale of the products of non-members. If not all, we must assume that some at least of its business was legitimate and that to some extent it might sell live stock that its members produced. But the boycott was general, intended it would seem to drive the Producers Commission Association out of business. That association was a competitor of the appellees and the suggestion that it was acting *ultra vires* sounds like an afterthought and cannot be supposed to have been the motive for the act. It is said that motive does not matter, but motive may be very material when

it is sought to justify what until justified is a wrong. But, whatever the motive, nothing is shown or suggested by the evidence to justify the general boycott that the Secretary's order forbade. The Secretary's order should be enforced, but without prejudice to the right of the appellees to refuse to deal with the Producers Commission Association in matters beyond its power.

A suggestion was made that the last named association was not within the protection of the Act of Congress. We see nothing in the limitation of its powers to prevent it, the statute seems to recognize it, § 306 (f), and the corporation was found by the Secretary to be a market agency duly registered as such.

*Decree reversed.*