**FARMERS' LIVESTOCK COMMISSION CO.
et al. v. UNITED STATES et al.**

Nos. 4389, 4390.

District Court, E. D. Illinois.
Dec. 14, 1931.

376

Borders, Borders & Warrick, of Kansas City, Mo., and Doherty, Rumble, Bunn & Butler, of St. Paul, Minn., for plaintiffs.

John Lord O'Brian, Asst. to Atty. Gen., Wendell Berge, Sp. Asst. to Atty. Gen., and Elton L. Marshall, Sol. for Department of Agriculture, and C. E. Miles, Asst. Sol. for Department of Agriculture, both of Washington, D. C., and Paul F. Jones, U. S. Atty., of Danville, Ill., for the United States et al.

Before ALSCHULER, Circuit Judge, and LINDLEY and WHAM, District Judges.

LINDLEY, District Judge.

Farmers' Livestock Commission Company, plaintiff in No. 4389, and L. W. Conover, et al. plaintiffs in No. 4390, market agencies, dealers and order buyers, transacting business at the National Stockyards, East St. Louis, Ill., brought these two suits, later consolidated, to enjoin the enforcement of an order of the acting Secretary of Agriculture, entered after hearing, February 24, 1931.

The controversy had its origin in an investigation instituted October 18, 1930, by the Secretary, in pursuance of section 309 of the Packers and Stockyards Act of 1921 (42 Stat. 159 [title 7, U. S. C., §§ 181–229, 7 USCA §§ 181–229]), wherein it was charged that plaintiffs were participating in unfair and unjustly discriminatory practices in violation of the act, viz., concerted and individual wrongful refusals to do business with the National Order Buying Company and the Producers' Livestock Commission Company at the stockyards.

The Secretary found that plaintiffs were participating in an illegal boycott as charged; ordered plaintiffs to desist therefrom and suspended their registration as market agencies for a period of 90 days. A temporary injunction against the suspension was granted by this court.

Section 307 of the act (7 USCA § 208) directs owners and agents at stockyards "to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services," prohibits regulations or

practices to the contrary and declares the same unlawful. Sections 309 and 310 of the act (7 USCA §§ 210, 211) confer upon the Secretary authority to inquire and hear, upon complaint or his own motion, any controversy as to any act of any market agency or dealers alleged to be in violation of law, and to direct parties to cease and desist from any condemned practice found to exist. Other sections provide for the suspension of offending parties and the recovery of penalties in appropriate actions. Under section 316 of the act (7 USCA § 217) the jurisdiction of this court over the action of the Secretary is the same as that over the action of the Interstate Commerce Commission.

Plaintiffs include, first, commission agents who sell livestock for shippers upon a commission basis to packers, order buyers and dealers; second, order buyers who buy for nonresident packers, sometimes upon commission and sometimes by taking title and reselling to the packer; third, dealers who buy and sell in their own name, usually in comparatively small lots of odds and ends; and fourth, Farmers' Livestock Commission Company, a co-operative commission agent organized under the Capper-Volstead Act (42 Stat. 388 [title 7, U. S. C., §§ 291, 292, 7 USCA §§ 291, 292]), which has not elected to qualify for benefits under the Agricultural Marketing Act (7 USCA § 521 et seq.).

The Producers' Commission Company, hereinafter referred to as Producers, is of co-operative character, qualified for benefits under the Agricultural Marketing Act. It is one of eight similar companies of the same name operating at eight various livestock markets. The National Order Buying Company, hereinafter referred to as N. O. B., owned by the eight Producers Companies, operates as an order buyer at each of the eight yards where the several eight Producer Companies operate. Its profits at any yard are alloted to the particular producers operating at such yard, and losses are similarly charged to the same party. Order buyers furnish to the commission firms and dealers their only opportunity to sell livestock to nonresident packers. Consequently, N. O. B. gives to its eight constituent owners, the Producers Companies, an approach of their own to the nonresident market without dependence upon the old line order buyers, and realizes for them and their members profits that would otherwise go to the old line order buyers. Such an agency, owned by co-operative associations in common, is authorized by the Capper-Volstead Act, § 1 (7 USCA § 291). The order buying transactions at East St. Louis constitute nearly three-fourths of the total business there transacted. That yard is the largest order buying point in the United States, and from it the Eastern independent packers largely procure their stock.

These various market agencies, because of their several closely associated activities, are dependent upon each other for successful results. Selling agencies are dependent upon order buying companies for three-fourths their outlet of stock, while dealers and order buying companies must rely upon and do business with commission houses and other dealers in making purchases. Efficient operation of the yard and the various agencies connected therewith, therefore, necessitate freedom and flexibility of commerce among the various agencies.

The Secretary found that such plaintiffs as sell livestock refused to sell to N. O. B. or to permit it to bid for livestock held by them for sale; that such plaintiffs as buy livestock refused to buy from Producers. He found this conduct to be unfair and unjustly discriminatory in that it deprived the N. O. B. and the nonresident packers of an unrestrained competitive buying market and shippers of an unrestrained competitive selling market. A full record of such findings and of the order to cease and desist appears in the findings and conclusions of the court.

Plaintiffs seek to enjoin the order upon the ground that the Packers and Stockyards Act is invalid; that the order is beyond the authority granted the Secretary by the statute and unsupported by the evidence, and that irregularities attending the proceedings work a nullity of the order.

An administrative order, such as that in question, is valid unless the statute fails to authorize it, or is invalid, provided there is substantial evidence to support it, and there can be no judicial interference with the exercise of administrative judgment or discretion either in the officer's conclusions or in the conduct of the proceedings. Thus, the Supreme Court said in Virginian Ry. v. U. S., 272 U. S. 658, 47 S. Ct. 222, 224, 71 L. Ed. 463:

"To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases, is beyond our province. Whether a rate

is unjustly discriminatory is a question on which the finding of the Commission, supported by substantial evidence, is conclusive, unless there was some irregularity in the proceeding or some error in the application of rules of law. Western Paper Makers' Chemical Co. v. United States, 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941. * * *

"The finding of reasonableness, like that of undue prejudice, is a determination of a fact by a tribunal 'informed by experience.' Illinois Central R. R. Co. v. Interstate Commerce Commission, 206 U. S. 441, 454, 27 S. Ct. 700, 51 L. Ed. 1128. This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it. Interstate Commerce Commission v. Union Pacific R. R. Co., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308."

See, also, Pennsylvania Co. v. U. S., 236 U. S. 351, 35 S. Ct. 370, 59 L. Ed. 616; Manufacturers Ry. Co. v. U. S., 246 U. S. 457, 38 S. Ct. 383, 62 L. Ed. 831; and Western Chemical Co. v. U. S., 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941.

■ As to the contention of plaintiffs that the law is unconstitutional because of uncertainty in its definitions of "unfair, unjust, unreasonable and discriminatory practices," we observe that the Supreme Court has held that the term "unreasonable restraint of trade" condemned under the Sherman Act (15 USCA §§ 1–7, 15), as defined in Standard Oil Company v. U. S., 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, did not render the act so vague as to be inoperative. Nash v. U. S., 229 U. S. 373, 33 S. Ct. 780, 57 L. Ed. 1232; U. S. v. Patterson (D. C.) 201 F. 697. In Hall v. Geiger, 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, the court refused to condemn a statute providing for the revocation of a stockbroker's license by a commissioner upon the latter's finding the broker to be "of bad business repute" or engaged in "illegitimate business or fraudulent transactions." The phrase "unfair methods of competition" condemned by the Federal Trade Commission Act (15 USCA §§ 41–51) was held sufficiently certain in Sears et al. v. Federal Trade Commission (C. C. A.) 258 F. 307, 6 A. L. R. 358; Federal Trade Commission v. Balme (C. C. A.) 23 F.(2d) 615, certiorari denied, 277 U. S. 598, 48 S. Ct. 560, 72 L. Ed. 1007.

■ Furthermore, as to this contention as well as those that the definition of commerce contained within the act usurps the function of the courts and that the act is invalid for the reason that it fails to prescribe adequate proceedings for the hearings and for the exercise of power by the Secretary, it is sufficient to observe that the Supreme Court by its decisions in Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; U. S. v. American Livestock Commission Co., 279 U. S. 435, 49 S. Ct. 425, 73 L. Ed. 787; and Tagg Bros. et al. v. U. S., 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524, sustained proceedings and orders of the Secretary based upon the sections of the act here attacked. We shall not hold the act invalid in the face of such implied approval.

■ The authorized suspension for violation of the act, without a jury trial, is not in conflict with the Sixth and Seventh Amendments to the Constitution. The guarantee of right of trial by jury does not apply to civil actions for the recovery of penalties (Oceanic Steam Navigating Company v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013; Hepner v. U. S., 213 U. S. 103, 29 S. Ct. 474, 53 L. Ed. 720, 27 L. R. A. [N. S.] 739, 16 Ann. Cas. 960), or to contempt proceedings for violation of an injunction (In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092). Such guarantee under the Seventh Amendment applies only to suits of such character as were maintainable at common law at the time the amendment was adopted, and, under the Sixth Amendment, only to proceedings technically criminal in character. Capital Traction Company v. Hof, 174 U. S. 1, 19 S. Ct. 580, 43 L. Ed. 873; Shields v. Thomas, 59 U. S. (18 How.) 253, 15 L. Ed. 368; U. S. v. Zucker, 161 U. S. 475, 16 S. Ct. 641, 40 L. Ed. 777. The withdrawal of a license or suspension from registration is merely the withdrawal of a government permit to engage in a business in which the licensee has no inherent right to engage, but in which he may participate only upon compliance with the conditions imposed by the government. If the government has the right to supervise the business, it may fix the conditions upon which parties may engage therein, and may, without the intervention of a jury, withdraw such permission when satisfied that the conditions are being violated. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643.

■ It is earnestly contended that the order of the Secretary is without authority upon his part, in that the law in condemning unfair, unjust, discriminatory practices in furnishing "stockyards services" attempts to regulate private business. Where strictly private business only is involved, individual refusals to deal with another, uninspired by agreement or tacit concerted action, are not wrongful in any legal sense. But such limitation does not apply to a business affected with a public use. Such a business must serve all without discrimination. Wyman on Public Service Corporations, §§ 1, 300, et seq. Nor can it be successfully maintained that the buying and selling of livestock on a public stockyard on behalf of others is not affected with a public use, in view of the opinions in Tagg et al. v. U. S. (D. C.) 29 F.(2d) 750, affirmed 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524. In view of the decisions in Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765; Wolff Company v. Industrial Court of Kansas, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280, we are of the opinion that the business of plaintiffs is impressed with a public use. It follows, therefore, not only that a concerted boycott is illegal (U. S. v. American Livestock Commission Company, supra), but also that individual refusal to buy from, sell to, or deal with the Producers and N. O. B., in the conduct of this business, are within the prohibitions of the statute as unfair, unjust, and discriminatory.

■ But plaintiffs assert that they were justified in their acts by misconduct upon the part of the Producers and the N. O. B., such as unfair competition, unfair practices, attempted monopoly upon the part of Producers and N. O. B.; and their alleged identity, resulting in one party acting as both buyer and seller. We discard as untenable the proposition that such conduct of itself justifies violation of the statutes by plaintiffs. We cannot agree that one who claims that another is himself violating the law may thereby be excused from performing his statutory duty. Such doctrine, followed to its legal sequence, would nullify statutes and permit litigants to assume for themselves the functions of government. The obvious answer to such contention is that for such misconduct the statute provides a remedy; that if the Secretary should fail to afford the facilities for such remedy, the place to complain will be some other forum.

If these two agencies are guilty of the misconduct asserted, the evidence said to be to that effect, here relied upon, is competent for use in an action by the government against such situation. The Secretary instituted the proceedings here attacked to determine whether the present plaintiffs were guilty of conduct prohibited by Congress. Producers and N. O. B. are not parties; their conduct may be investigated by the Secretary in similar proceedings instituted against them. If he has unduly delayed such action upon a complaint filed after this proceedings was instituted, as asserted, that fact is irrelevant to the present issues, and we have no power here to review such alleged lack of diligence or discretion. The law affords adequate remedies for violation of the Sherman Act and all other statutes, and for unfair competition. Plaintiffs' conduct is part and parcel of a public business and affects shippers, buyers, and the public generally. Congress has said it will not permit in a public business the practice complained of, and what some one else may be doing cannot justify violation of the statute. To hold otherwise would ignore entirely the public character of plaintiffs' business.

■ Plaintiffs assert as justification for their acts that N. O. B. and Producers are not financially responsible. Such irresponsibility arises, they say, from the fact that the Agricultural Marketing Act is unconstitutional and the loans made by the Farm Board under its provisions to those concerns are therefore illegal and not proper to be considered as assets. Plaintiffs are not directly attempting to prevent the enforcement of that act; they are merely asserting unconstitutionality as a basis for the proposition that a loan made in pursuance thereof is void, and that therefore they are excused from dealing with the recipient of the money, for the reason that without it, the latter would be insolvent. They seek thus to assert merely a right to justify a course of conduct otherwise illegal. Alleged invalidity is not open to our consideration under circumstances such as these, showing no legal injury to the plaintiffs. Supervisors v. Stanley, 105 U. S. 305, 26 L. Ed. 1044; Clark v. Kansas City, 176 U. S. 114, 20 S. Ct. 284, 44 L. Ed. 392; Hooker v. Burr, 194 U. S. 415, 24 S. Ct. 706, 48 L. Ed. 1046.

Plaintiffs, however, assert in addition that the operation of the Agricultural Marketing Act, through the loans made to N. O. B. and the general plan of activities as exemplified by the conduct of N. O. B. and Producers, will inevitably drive them out of business; and that they are therefore being deprived of property rights in violation of the Constitution and its amendments. No one has a constitutional right to pursue a particular calling impressed with a public use, free of competition from an agency authorized by Congress in pursuance of its constitutional powers. The argument is one of policy and not of law. If the economic result prophesied is imminent and is undesirable, the proper forum for argument against the act is the legislative chamber, not the courtroom.

Plaintiffs contend further, in justification of their boycott, that the Producers and N. O. B. have been guilty of another improper practice, vis., "Weighing Up" or "Marking the Ticket." This is a practice whereby livestock passes from the seller to the buyer, not at an agreed price, but at a price to be determined later in the day on the basis of the prevailing market price for livestock of similar grade and quality as established by that day's market.

Under the evidence, sales made upon the criticized basis are not in the usual course of business, except as to miscellaneous livestock upon which a market value cannot be easily established until the end of the day. If the two concerns boycotted insist on doing business only upon such a basis, inasmuch as it is not in the usual course of business, plaintiffs are justified in refusing to deal. They cannot be compelled to co-operate except in the usual course of business, according to established commercial uses. However, the government accedes to this suggestion and concedes that such sales cannot be considered usual, and that the order of the Secretary, properly construed, restrains plaintiffs from refusing to do business in the usual course. If plaintiffs do not wish to participate in the use of the "Weighing Up" practice, there is nothing in the order properly construed requiring them so to do. On the other hand, if the two concerns elect to follow such practice between themselves, and such practice between the two amounts to an unfair practice in the public business of the stockyards, it can be made basis for complaint under the act.

In view of the well-established rule that the Secretary's findings of fact are conclusive if supported by substantial evidence (I. C. C. v. Union Pacific Railroad, 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308; American Live Stock Commission Co. v. U. S. (D. C.) 28 F.(2d) 63; Id., 279 U. S. 435, 49 S. Ct. 425, 73 L. Ed. 787), it is within the province of this court, so far as consideration of evidence is concerned, to determine only whether there is substantial evidence to support the findings and conclusions attacked. We are not called upon to decide whether we would have reached the same conclusions as did the Secretary.

The evidence as to agreement to boycott, as found by the Secretary, is wholly circumstantial. It includes, first, a letter from the president of the Exchange to its members, including all plaintiffs except the Farmers, dated August 1, 1930, in which the writer explained the N. O. B. and its purpose, and stated that its object was "to obtain control of the livestock machinery of the country," and that it was wholly unnecessary and injurious to the market, and would constitute a surplus facility, a strange intruder in the field. This letter was in a tone of warning, of condemnation, and could inspire only similar feeling upon the part of its readers. It contained no complaint of irresponsibility or unfair practices. The writer testified that his purpose was to inform the market of the danger of allowing N. O. B. to do business at the yard. He denied any intent to discourage trading with N. O. B., but admitted the hope that his letter would have an effect. N. O. B. entered the market August 4, 1930; thereupon plaintiffs, except as hereinafter stated, refused to do business with them. The Farmers sold them some stock on that day, but none thereafter. With strange unexplained unity, plaintiffs, with the exceptions hereafter referred to, refused to deal. A large number of witnesses testified that their concerns had not traded with Producers or N. O. B. and would not do so, saying that their purpose in so refusing rested upon their fear that those two concerns would ultimately drive them out of business if plaintiffs did not drive them out of business first. The evidence supports the finding that their refusal was not based upon financial reasons, "marking the ticket," or other practices to which objection is now made. Indeed, it appears from the testimony that though other objections now raised were removed, they would still refuse to deal. We shall not attempt to review the evidence in detail, but it clearly warrants a finding of unanimity of action, simultaneousness of time,

identity of motive and completeness of result. The Secretary had before him substantial evidence to justify the finding that each boycotter refused to deal with Producers or N. O. B., hoping that the other operators would do the same, relying upon such action, and expecting that the others would in turn rely upon his following the same course of action. Apparently there was mutual reliance upon mutual refusal to deal.

Evidence of an express agreement was not necessary; a mere tacit understanding between the various parties so to act as to achieve a common unlawful purpose, followed by action in furtherance thereof, is sufficient to constitute an illegal combination. If there is an intent upon the part of two or more persons to commit an unlawful act and it is followed by concurrence between themselves and others in action, with intent to effect the common purpose, mutuality in action toward the end hoped to be achieved, there is substantial evidence of wrongful joint undertaking, though there be no express agreement, and though no spoken or written word between the conspirators is shown. In other words, if the minds of the parties have met by agreement or by tacit understanding upon an illegal undertaking and, in pursuance of that understanding, concurrence of action to a common end follows, we have the essentials of a guilty combination. The parties may not have previously associated together; one may not know other members; but if, knowing that others have combined to violate the law, he becomes a co-operative party to an illegal undertaking, he becomes liable as a part thereof. As a corollary, it follows that evidence of illegal combination may be and usually can be sustained only by proof of circumstances. As the Supreme Court has said, it is elementary that conspiracies are seldom capable of proof by direct testimony, and may be inferred from the things actually done. Eastern States Retail Lumber Dealers' Association v. U. S., 234 U. S. 600, 34 S. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; American Live Stock Commission Co. v. U. S. (D. C.) 28 F.(2d) 63; Id., 279 U. S. 435, 49 S. Ct. 425, 73 L. Ed. 787; Pierce v. U. S., 252 U. S. 239, 40 S. Ct. 205, 64 L. Ed. 542; Allen v. U. S. (C. C. A.) 4 F.(2d) 688. In view of the testimony and the principles of law to which we have adverted, it is clear that the Secretary's order is supported by substantial evidence.

What we have said in this connection applies with equal force to all plaintiffs except John Bowles & Co., Shippers' Livestock Commission Company, Johnson Commission Company, and Leiner Livestock Company. These four companies have not refused to deal with Producers or N. O. B. The only evidence as to them is that they made no offers to deal with either concern. This is mere failure to act, mere inaction. Consequently, as to them, there is no substantial evidence to support the order.

The Secretary found also that financial irresponsibility, "marking the ticket" practice and the other objections to the activities of Producers and N. O. B. did not furnish the real motive or reason for the boycott, but were afterthoughts raised at the time of the hearing. We are of the opinion that the evidence is sufficient to support this finding, for it appears that the parties would have refused dealings and would have continued to do so even though no basis for the additional objections now raised had existed.

The plaintiffs contend further that the complaint, i. e., the order of inquiry and notice, was so insufficient as to violate the plaintiffs' constitutional rights. The complaint sets up the conspiracy to refuse dealings with the two concerns and refusals pursuant thereto. Common-law requirements as to pleading do not exist in such cases. We are of opinion that the order and notice were sufficient. Federal Trade Commission v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 64 L. Ed. 993; American Livestock Commission Co. v. U. S. (D. C.) 28 F.(2d) 63; Id., 279 U. S. 435, 49 S. Ct. 425, 73 L. Ed. 787.

As to the alleged misjoinder of parties, the contention that a boycott against the N. O. B. differs from a boycott against the Producers, and that the two cannot be joined, is not, it seems to us, well founded; for the technical rules as to misjoinder of parties applicable to an action at law or a criminal prosecution do not apply with the same rigidity to proceedings by administrative tribunals. The relationship of the two concerns and the plaintiffs in the public business of the stockyards of East St. Louis amply justify the joint incorporation of the subjects in the one inquiry undertaken by the Secretary.

Plaintiffs complain that the Secretary occupies a dual capacity as prosecutor and judge. As stated by another court, this criticism is "too unsubstantial to justify discussion." National Harness Manufacturers' Association v. Federal Trade Commission (C. C. A.) 268 F. 705, 707. This rule fol-

lows from the premise that a regulatory commission must investigate and ascertain the facts necessary to the proper performance of its regulatory or administrative duty. Private parties may make complaint, but if such parties are not sufficiently interested to complain, or refrain from so doing because to do so would be against their own interest, the protection of the public's interest demands that the commission be so empowered and equipped as to be able to assure that the real facts will be produced. Such function is no bar to fair judicial ruling upon those facts; rather, such powers and equipment tend to procure the more efficient, just, and impartial discharge of the regulatory powers of the office.

But it is said by the plaintiffs that the Secretary's ex officio membership in the Farm Board necessarily involves him in the alleged purpose of that board to produce a monopoly in its agencies in the various stockyards to the exclusion of plaintiffs, and that he is therefore prejudiced against the plaintiffs and disqualified to act herein. As heretofore said, we cannot speak for the policy of the legislative and executive departments, as disclosed by the legislation in question, and the administration thereof. Whether that intent and purpose goes to the dire extent prophesied by plaintiffs we doubt, in view of the past. The policy and political philosophy of the American government are opposed to unregulated monopoly, but the wisdom of that policy can be debated only in the legislative halls. We find no evidence that the Farm Board seeks to advance certain policies through illegal methods.

It must be assumed that the officers administering the law are properly qualified. It is the Secretary's duty to administer the Packers and Stockyards Act, under which this inquiry was conducted. It was his duty to act also as an ex officio director of the Farm Board under the Agricultural Marketing Act. The Executive Department selects such administrative officers. There is no legal requirement that they shall be chosen from any one profession or another. The qualifications of the Secretary and Acting Secretary are not subject to judicial review in such actions as this for the purpose of interfering with any of the administrative acts under power vested in the office by law.

With regard to the refusal of subpoenas ad testificandum or subpoenas duces tecum, the action of the Secretary, it seems to us, was entirely proper. The proof tendered was, in our opinion, irrelevant, immaterial, and of such character that it could not properly be urged herein as justification. The same is true as to evidence excluded. We find no such irregularities in the rulings with regard thereto as we have any right to review.

The plaintiffs are not compelled to do business with Producers and N. O. B. except in the usual course of business as conducted at the National Stockyards. Clearly the Secretary's order was so intended, and should so be construed. If, in the free and open competitive field, plaintiffs transact business with the two concerns with the same open, untrammelled freedom of commerce as with other agencies of the same character at the same place, the law is satisfied and the order complied with. If the two concerns insist on doing business only upon the "ticket marking" basis, or upon any other basis which is not universal, but only exceptional, such action is not protected by the order. The plaintiffs may not, in such exceptional instances or as to such exceptional practices as are part of the usual course of business, refuse to deal. What the law requires and what the order demands is fair, undiscriminatory practices; the transaction of business according to its usual course at the National Stockyards.

The order of suspension is authorized by statute and within the discretion of the Secretary. It is therefore beyond our power to restrain the same. We observe the Secretary's reservation of power to set aside the order of suspension in case of compliance with his order. We have no cause to suspect that the power thus reserved will be exercised or its exercise withheld in any spirit of oppression or iniquity.

We have entered to-day the findings of fact and the conclusions of law, reference to which we have made in connection with this memorandum. In view of the same and what has heretofore been said, it follows that the order, as properly construed, was based upon substantial evidence, is within the authority of a constitutional act, was not accompanied by such irregularities as to invalidate the same, and therefore cannot be restrained. The bills will be dismissed for want of equity at the cost of the plaintiffs, except as to the four companies as to whom we find no substantial evidence to support the order. As to these four companies, there will be a permanent injunction against the defendants. Proper decree may be submitted.