**UNITED STATES v. DONAHUE BROS., Inc.**

No. 9363.

Circuit Court of Appeals, Eighth Circuit.

July 22, 1932.

Wendell Berge, Sp. Asst. to Atty. Gen. (Charles E. Sandall, U. S. Atty., of Omaha, Neb., and John Lord O'Brian, Asst. to Atty. Gen., on the brief), for the United States.

James H. Hanley, of Omaha, Neb., for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

GARDNER, Circuit Judge.

This is an action brought against appellee to recover statutory penalties for the disobedience of an order of the Secretary of Agriculture purporting to have been entered under authority of the Packers and Stockyards Act 1921 (42 Stat. 159 [7 USCA §§ 181–229]). On stipulation of the parties it was tried to the court without a jury. The parties will be referred to as they appeared in the lower court.

The order of the Secretary of Agriculture was entered November 21, 1924, and directed the defendants to cease and desist from violating the Packers and Stockyards Act "(1) by disposing of funds in its possession or control so as to endanger the prompt accounting for payment of the proceeds due owners of live stock, and intermingling its personal accounts with those belonging to shippers and consignors of live stock consigned to it in its capacity as a market agency; (2) by crediting the net proceeds of the sale of live stock to its estray account or other personal account, instead of remitting such proceeds promptly to the shippers; (3) by rendering incorrect account sales to owners and consignors; and (4) in any other manner disclosed by the facts found by the Secretary of Agriculture."

The petition of the plaintiff, all the allegations of which material to this appeal were found by the lower court to be true, alleged the corporate existence of the defendant; that it maintained a place of business at the Union Stockyards, South Omaha, Neb., where it engaged in the business of selling and buying live stock on a commission basis for the account of others, and is a market agency within the meaning and subject to the provisions of the Packers and Stockyards Act of 1921; that as a market agency, it receives

from time to time shipments of live stock for sale, and for the purpose of remitting the proceeds thereof to the persons entitled thereto; that on or about April 23, 1924, the Secretary of Agriculture ordered the institution of an inquiry and investigation for the purpose of determining whether or not the defendant had engaged in unfair practices in violation of the Packers and Stockyards Act and the rules and regulations thereunder, and the defendant had due notice of the issuance of such order. On hearing held pursuant thereto, defendant was found to have violated the act by disposing of shippers' funds so as to endanger prompt accounting for payment due the owners of live stock, and by intermingling its personal accounts with those belonging to shippers of live stock. An order was thereupon entered by the Secretary directing defendant to cease and desist from such practices. It is alleged that the defendant violated this order by converting the proceeds of sales of such stock to its own use, thereby endangering the payment of proceeds due the owners of live stock and by intermingling its personal accounts with those belonging to shippers and consignors. Six specific instances of the violation of the cease and desist order are alleged, and for these violations and failures to obey the order of the Secretary, plaintiff seeks to recover penalty in the sum of $3,000.

The answer is not material because the court found all the allegations of plaintiff's petition to be true, but concluded that a regulation of the Secretary dated June 14, 1923, was legislative in its nature and without authority of law, and that the Secretary exceeded his power and authority in promulgating such regulation, and hence the proceedings before the Secretary were insufficient as a basis for recovery in this action. The court therefore dismissed the action, and the government has appealed.

Section 312 (title 7, § 213, USCA), provides that—

"(a) It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with the receiving, marketing, buying or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing or handling, in commerce at a stockyard of livestock.

"(b) Whenever complaint is made to the Secretary by any person, or whenever the Secretary has reason to believe, that any stockyard owner, market agency, or dealer is violating the provisions of subdivision (a), the Secretary after notice and full hearing may make an order that he shall cease and desist from continuing such violation to the extent that the Secretary finds that it does or will exist."

Section 314 of the same act (7 USCA § 215) provides a penalty in the sum of $500 for each violation of a cease and desist order made under the provisions of sections 310, 311, or 312 (7 USCA §§ 211, 212 or 213), and provides that such forfeiture shall be recoverable in a civil suit in the name of the United States.

By section 310 of the act (7 USCA § 211) it is provided, among other things, that if, after hearing, the Secretary is of the opinion that any practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be unjust, unreasonable, or discriminatory, he may prescribe and determine what regulation or practice is or will be just and reasonable to be followed, and may make an order that the owner or operator shall cease and desist from such violation to the extent to which the Secretary finds that it does or will exist.

Acting under these statutory provisions, the Secretary entered the cease and desist order, for the violation of which this action is brought.

In disposing of the issue, the lower court expressed the view that the action of the Secretary in entering the cease and desist order was bottomed on a regulation promulgated on or about June 14, 1923, which, so far as here pertinent, reads as follows: "No market agency shall make such use or disposition of funds in its possession or control as will endanger or impair the faithful and prompt accounting for and payment of such portion thereof as may be due the owner or consignor of livestock or other person having an interest therein and to this end shall so handle all such funds as to prevent their being intermingled or confused with other accounts or funds of the market agency kept or used for other purposes."

This action, however, is for a violation of the cease and desist order entered upon hearing after proper notice to the defendant, and is not dependent for its validity upon the regulation referred to. The regulation promulgated by the Secretary condemned the practice later covered by the cease and desist order as unfair and unjust within the meaning of the act. Of course, if these practices are not violative of the provisions of the act,

then the Secretary had no authority to enter the cease and desist order; but we are of the view that the regulation promulgated June 14, 1923, was in the nature of an administrative measure designed to advise those subject to the act in advance what practices the Secretary considered to be in violation of the act. It gave notice to the defendant that, as the Secretary construed the act, these practices were forbidden. There was no attempt to legislate by this regulation, but simply to give notice of the Secretary's construction of the act, so that the cease and desist order depends for its validity upon the statutes and not upon the regulation.

█ The act defines a stockyard service as a service or facility furnished at the stockyards in connection with the receiving, buying, or selling, on commision basis or otherwise, marketing, feeding, watering, holding, delivery, shipment, weighing, or handling, in commerce, of live stock. It defines the term "market agency" as "any person engaged in the business of (1) buying or selling in commerce livestock at a stockyard on a commission basis or (2) furnishing stockyard services." Section 301 of the act (title 7, § 201, USCA).

The authority of the Secretary to take the action challenged in this suit must be found in the provisions of the Packers and Stockyards Act, and, in the final analysis, the question to be determined is whether or not the practices condemned by the Secretary are within the scope of the act. There can be no doubt that the defendant is a market agency as defined in the act, and hence is subject to proper order of the Secretary of Agriculture. Farmers' Livestock Commission Co. v. United States (D. C.) 54 F.(2d) 375; Tagg Bros. & Moorhead v. United States, 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524; Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229.

It is contended by defendant that the practices condemned by the Secretary in his cease and desist order were not subject to his regulation under the act, and that Congress had not disclosed any purpose to legislate in the field of accounting between the commission men and their customers, beyond the matter of requiring full and true disclosure to be made by bookkeeping and furnishing of indemnity in the nature of bonds; that the matter of handling money and safeguarding it had been left by Congress to local law. The act is a very broad and comprehensive law. If we may look to the report of the congressional committee in aid of its interpretation, as was done in Tagg Bros. & Moorhead v. United States, supra, it would seem clear that those in charge of the legislation were impressed with its comprehensiveness. In the report of the House Committee on Agriculture, it is stated that this law, "and existing laws, giving the Secretary of Agriculture complete inquisitorial, visitorial, supervisory, and regulatory power over the packers, stockyards, and all activities connected therewith; that it is a most comprehensive measure and extends further than any previous law in the regulation of private business, in time of peace, except possibly the interstate commerce act."

Further it is stated in this report: "It is not the thought of the committee that the act will in any way interfere with the existing livestock exchanges and similar bodies now organized in the yards, *in so far as their rules, regulations, or practices are not found by the Secretary to be unfair or unreasonable.* [Italics supplied.]"

Mr. Haugen, who was Chairman of the House Committee on Agriculture, speaking for his committee with reference to this bill, said:

"The secretary is to have exclusive jurisdiction over all transactions connected with the slaughtering and marketing of livestock and livestock products in interstate · commerce, subject, of course, to court review; to gather and compel information concerning and to investigate the organization, conduct, practices, and management of the packers and stockyards, *including all transactions in or about the stockyards by all concerns or persons dealing on such yards.* * * *

"In the case of the stockyards the evils to be dealt with are a multiplicity of more or less minor matters, such as proper rates and charges for the care of cattle at the stockyard and for feed furnished to them, *and minor injustices against shippers and purchasers,* which, if to be remedied effectively, must be dealt with promptly. [Italics supplied.]"

█ The defendant as a market agency stood as a fiduciary in relation to the proceeds of sales of live stock handled by it for the benefit of its customers, and the law has always looked with disfavor upon the practice of one who in such a position used such property as his own, or commingled it with his own. Union Stock-Yards Nat. Bank v. Gillespie, 137 U. S. 411, 11 S. Ct. 118, 34 L. Ed. 724; Farmers' & Mechanics' Natl. Bank v. Sprague, 52 N. Y. 605. To do so without au-

thority from his cestui que trust would not be countenanced by a court of equity and would be condemned generally as bad business practice. The act specifically forbids unfair, unjust, unreasonable, or deceptive practices or devices by market agencies in connection with the marketing of live stock or the performance of stockyard services. The Secretary is granted authority to enforce just and reasonable practices and to prevent those unjust and unreasonable. True, the act does not specify forbidden practices in detail, but the constitutionality of the act is not assailed, and we think could not be successfully assailed on the ground that the forbidden practices are too uncertainly stated. Farmers' Livestock Commission Co. v. United States (D. C.) 54 F.(2d) 375; United States v. American Livestock Commission Co., 279 U. S. 435, 49 S. Ct. 425, 426, 73 L. Ed. 787; Federal Trade Commission v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 75 L. Ed. 1324.

In United States v. American Livestock Commission Co., supra, the Secretary of Agriculture entered an order requiring the American Livestock Association to discontinue a boycott by which they refused dealings with the Producers' Commission Association at the Oklahoma National Stock Yards. It was urged that there was nothing in the Stockyards Act which prevented these dealers from refusing to deal with whom they chose. In disposing of this contention, Mr. Justice Holmes tersely said: "But we think that it does not need argument to show that a boycott of a dealer in a stockyard may be an unfair practice under the Act as it is found to have been in this case."

■ One of the purposes of this act was to protect the owner and shipper of live stock, and to free him from the fear that the channel through which his product passed, through discrimination, exploitation, overreaching, manipulation, or other unfair practices, might not return to him a fair return for his product. The practices indulged in by the defendant stand admitted, and the Secretary found that these practices were unfair. This determination by the Secretary is entitled to great weight. The proper handling of shippers' funds and their proper transmission to the shipper is a part of defendant's duty in performing stockyard services. The sale of live stock contemplated by this act is not completed until all the services which the market agency is called upon to perform have been performed. That service is not complete until the agency has fully accounted to the shipper for the proceeds of the live stock sold. The regulation of any sale which disregards accounting to the shipper for the proceeds would be of doubtful value to the shipper. The contention that Congress only intended to legislate as to the method of handling accounts of shippers on the books of the commission men, it seems to us, is too narrow. The bookkeeping requirements are aids in detecting violations of law. Similar provisions are found in the Grain Futures Act (7 USCA §§ 1–17). But the shippers are not interested primarily in the methods of bookkeeping employed by the commission men. They are directly interested in the practices of the market agency in the matter of remitting to them proceeds of sales. But it is urged that, inasmuch as the act requires the market agency to furnish a bond for the protection of the shipper, this indicates an intent to adopt this as an exclusive remedy. There can be no assurance that the bond required (in this case a $30,000 bond) will fully protect shippers' interests; neither is the requirement for furnishing such a bond inconsistent with the action of the Secretary in demanding that the defendant cease and desist from the practices condemned. If, notwithstanding the demands of the Secretary, the commission men persist in the practice, and by reason of such practice the shippers suffer pecuniary loss, they could then recover on the bond. The prohibition against unfair practices is to protect shippers. The bond requirement is to give shippers a remedy when protection fails.

■ We are of the view that the practices condemned as unfair by the Secretary and forbidden by his cease and desist order, constitute unfair practices within the scope of the Packers and Stockyards Act, and that the Secretary had authority to enter this order. It is conceded that it was violated; and hence the plaintiff was entitled to recover the penalties provided by statute. The judgment appealed from is therefore reversed, and the cause remanded, with directions to grant the plaintiff a new trial.