Joe WILLIAMS, Plaintiff,

v.

S. T. HAURIGAN, Harold H. Hanson, and Chas. M. Siefert, as Review Committee, and as Members of said Committee, Defendants.

Civ. No. 64–4N.

United States District Court
D. South Dakota,
Northern Division.

Aug. 25, 1965.

Agor, Siegel, Barnett & Schutz, Aberdeen, S. D., and Archie R. Moore, McIntosh, S. D., for plaintiff.

Harold C. Doyle, U. S. Atty., Sioux Falls, S. D., for defendants.

BECK, Chief Judge.

This is a bill in equity under 7 U.S.C. A., Section 1365, for review of the Review Committee's January 23, 1964 Determination, its second,[1] that the petitioner's total wheat acreage for 1962 was 1,307.7 acres, that his wheat allotment was 450.9 acres, that the excess was 856.8, that the actual yield was 17 bushels per acre, that his actual production was 14,565 bushels and the 1962 penalty on the excess $23,158.35.

The petitioner answers: that his total 1962 wheat production on the acreages involved, was 7,149 bushels, 500 some bushels less than the quantity allowed and that he for that reason could not be subjected to any penalties, including the one which now has been imposed.

The sufficiency of that answer, as a complete defense, is admitted, but challenged on the ground that the evidence in support thereof did not overcome the Committee's final Determination of a per acre yield, in bushels, of seventeen and a quantity total of 14,565.

1. The first having been as follows: "The Review Committee has determined that the 1962 *normal yield* for farm No. 47-021-5-M217 shall be 17 bushels. The 1962 excess bushels will be 14,565.0. The amount of the 1962 penalty will be $23,158.35 in accordance with Para 74 of 3 Wheat (Rev. 1)". (Emphasis supplied).

The *normal yield*, referred to in the first Determination, was on September 17, 1963, upon directions from the Secretary of Agriculture and within the forty-five day limit prescribed by the regulations, 7 C.F.R. Chap. VII Sec. 711.25(c), changed to *actual yield*. Form MQ-58 dated August 21, 1963, with the change dated September 17, 1963.

The Committee's first Determination was unanimous. Its second was two to one, Hanson Dissenting.

While the court may not substitute its judgment for that of the Committee where the latter has applied the broad phrases in the regulations to a specific state of facts and there is substantial evidence to support its conclusions, Lee v. DeBerry, 219 S.C. 382, 387, 65 S.E.2d 775, 777, Luke v. Review Committee, 155 F.Supp. 719 (D.C.W.D.La. 1957), Review Committee, Venue VII, Etc. v. Willey, 275 F.2d 264, 273 (8 Cir. 1960), it is otherwise, in a given case, where such evidence consists of unrelated statistics, speculations, carelessly conducted investigations, hearsay, relevant, but only remotely related and there is positive uncontradicted corroborating proof of a crop which clearly is within the limits of the regulations. Thus in Willapoint Oysters v. Ewing, 174 F.2d 676, 691 (9 Cir. 1949), it is said:

> "The degrees of probative force and reliability of hearsay evidence are infinite in variation, and its use by administrative bodies, ex necessitate, must in part be governed by the relative unavailability of other and better evidence. However, since "substantial evidence" includes more than "uncorroborated hearsay" and "more than a mere scintilla," the findings, to be valid, cannot be based upon hearsay alone, nor upon hearsay corroborated by a mere scintilla. Founded upon these requirements, the test whether evidence is "substantial," is whether, in the individual case before the court, there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion",

and again at page 690 it is indicated that the validity of an administrative "order *can never rest upon conjecture, guess or chance*". (Emphasis supplied).

Posturing the case, from that point of view, the court finds the postcard and letter information as to wheat yields on an adjoining farm and others close but managed or owned by others, having little if any probative value, to the point of not being relevant and therefore incompetent, Willapoint Oysters v. Ewing, supra, since in conjunction therewith there were no clinching comparisons as to soil, planting time, re-seeding, rotation program and damage by cut worms, wind, rust and hail.

The record reflects a curious indifference on the part of the local ASC to those factors and others basically important, as for instance, the use of what "amounted" to the Dewey County wheat yield average, rather than the actual bushels produced in the process of assessing the maximum penalty of $46,318.-29. Notice of that assessment was on July 30, 1962,[2] with the on site inspection not before, but one day later. Like attitude comes to the fore as trained investigators checked the Lantry elevator for the asserted excess, but not in more remote storage places where ostensibly it would have been left had the producer tried to conceal. Ziebach County ASC could have assisted, but wasn't asked. Carter, one of the combiners, was at the hearing but not questioned. Johnson, the owner, had an interest in the total crop. His testimony, too, was left out. Adjoining farmers relied on, counted seven combines—an addition method not explained, unless they counted coming and going and one more—yet no questions. There was a relationship in the number of combines, in one truck only being used, in the hauling distance of thirty miles back and forth, in the number of trips per day and the per day harvesting potentials of the machines. This, too, was left untouched. Finally, marketing quotas, marketing cards, no evidence of violations, and the ultimate, where, if there was such a large excess was it placed, and the unanswered petitioner's prima facie case, positively proved, fully corroborated, not weakened in any specific detail, that the actual production could not have exceeded the quantity specified.

While the court is bound by the substantial evidence rule and must weigh and consider all of the evidence and not

---

2. Form M–93, July 30, 1962, with mailing receipts attached.

parts thereof favorable to one side, it is confronted here with a situation, anticipated in the course of the Senate Hearings on the Administrative Procedure Act, Willapoint Oysters, supra,[3] explained as follows:

" 'Substantial evidence' means evidence which on the whole record is clearly substantial, plainly sufficient to support a finding or conclusion under the requirements of Section 7(c), and material to the issues. It is exceedingly important. *Difficulty has come about by the practice of agencies and courts to rely upon something less—suspicion, surmise, implications, or plainly incredible evidence.* Although the agency must do so in the first instance, under this bill it will be the duty of the courts to determine in the final analysis and in the exercise of their independent judgment whether on the whole of the proofs brought to their attention the evidence in a given instance is sufficiently substantial to support a finding, conclusion, or other agency action or inaction. In reviewing a case under this fifth category, the court must base its judgment upon its own review of the entire record or so much thereof as may be cited by any party." (Emphasis supplied.)

Particularly apt also, especially the last part, is the comment in National Labor Relations Board v. Falls City Creamery Company, 207 F.2d 820 (8 Cir. 1953):

" * * * We must not weigh the evidence and substitute our judgment for the Board's as to which of conflicting evidence is entitled to the greater weight, if our judgment in that regard should differ from the Board's. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 596, 61 S.Ct. 358, 85 L.Ed. 368. But when we say we must not weigh the evidence, the term weigh is used in its legal sense, connoting a determination of which evidence carries the greater conviction. That, under the law, is the function of the Board. But when we discharge our responsibility of determining whether a factual conclusion is supported by substantial evidence on the record considered as a whole, we must actually weigh the evidence. But then it is 'weighed' in another sense entirely; not to determine whether the evidence supporting the Board's finding is more convincing or of greater weight than evidence to the contrary, but for the purpose of comparing both and determining whether by comparison the evidence followed by the Board is substantial when compared with all the evidence in the record on the subject. Thus it results that when all of the evidence on the issue in question is meager— when, for example, the only evidence of the motive of discharge of employees is union activity, slight evidence of union antipathy by the employer, and coincidental discharge, the evidence supporting the conclusion that the discharge was on account of union activity may be 'substantial'. *And in other cases where the same evidence is present but with it in the record is a mass of evidence so preponderant that by comparison the meager facts, 'substantial' standing comparatively alone, shrink to such a comparative insignificance that they cannot be said to be substantial in the light of the entire record, a finding based upon them has not been permitted to stand.*" (Emphasis supplied).

See also Bituminous Material & Supply Company v. National Labor Relations Board, 281 F.2d 365 (8 Cir. 1960), Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, and National Labor Relations Board v. International Union, etc., 279 F.2d 951 (8 Cir. 1960).

The hearsay, in the case, used to sustain and invoke the substantial evi-

---

3. Page 689.

dence rule, failing as it did under the crucial test of critical scrutiny, carried little relevancy, therefore inconsequential as to weight and a segment of evidence which under this record yielded to the direct and positive produced as the petitioner made his prima facie case.

Accordingly, the case is remanded to the Review Committee with directions to reverse its Determination, to find 7,149 bushels of wheat as the actual production during the farming season of 1962, to cancel the penalty assessment and liens imposed, to direct the local ASC to do likewise and under the Act to grant all other relief consistent herewith.

This Decision is to be regarded as the court's Findings of Fact and Conclusions of Law to support its order.