630 F.2d 586
 Bill RICE and Lois Rice, Individually, and Bill Rice and
Lois Rice, d/b/a Cleburne County Livestock
Auction, Heber Springs, Arkansas, Appellees,
v.
Clenis WILCOX and Bill Davis, Individually, and Bill Davis,
d/b/a Davis Livestock Auction, Batesville,
Arkansas and Tri-State Insurance
Company, Appellants.
 No. 79-1479.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 21, 1980.
Decided Aug. 27, 1980.
 
 John C. Gregg, Highsmith, Gregg, Hart & Farris, Batesville, Ark., argued, for appellant, Davis.
 Keith Rutledge, Batesville, Ark., argued, for appellant, Wilcox.
 Donald P. Raney, Lightle, Beebe & Raney, Searcy, Ark., argued, for appellee.
 Alice Daniel, Asst. Atty. Gen., Michael F. Hertz, Atty., Civil Division, U. S. Dept. of Justice, Washington, D. C., and James Michael Kelly, Asst. General Counsel, Raymond W. Fullerton, Director, Litigation Division, Judith A. Wenker and John J. Casey, Attys., U. S. Dept. of Agriculture, Washington, D. C., for amicus curiae, Secretary of Agriculture.
 Before BRIGHT, STEPHENSON, and McMILLIAN, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 Bill Davis and Clenis Wilcox appeal from the decision of the United States District Court, Eastern District of Arkansas[1] sustaining the reparation orders against them made by the Secretary of Agriculture under the Packers and Stockyards Act 1921 (7 U.S.C. § 181 et seq.).
 
 
 2
 Bill Davis, d/b/a Davis Livestock Auction (Davis), was both a market agency selling livestock on commission and a dealer buying and selling livestock for his own account operating on a posted stockyard. Davis was found to have violated 7 U.S.C. § 208 by committing the unjust practice of retaining the proceeds from the sale of cattle owned by Bill and Lois Rice and consigned to him by Wilcox.
 
 
 3
 The Secretary of Agriculture found Clenis Wilcox to be operating as a dealer and his failure to pay Rice for livestock purchased was also found to be an unjust practice. Thereafter, the reparation orders were entered, which are the basis for this appeal. We affirm the action of the district court sustaining the reparation orders.
 
 I. Background
 
 4
 Appellees Bill Rice and Lois Rice, d/b/a Cleburne County Livestock Auction (Rice) operated a posted stockyard at Heber Springs, Arkansas and constituted a market agency selling livestock on commissions.
 
 
 5
 Until December 2, 1972, Wilcox purchased livestock at the Rice sale using personal checks. On December 2, there were insufficient funds in Wilcox's account to satisfy one of these checks. On December 6, Rice contacted Davis and notified him of Wilcox's overdraft. Davis gave the Rices another check, drawn on his custodial account.
 
 
 6
 From December 2 until March 3, 1973, Rice required Wilcox to pay for all cattle purchases on the day of sale. Payment was made with checks drawn on other individuals' accounts. Two of these checks were drawn on Davis' account. In early March 1973, Wilcox began hand delivering checks for livestock purchased at the Rice auction one week after purchase. On at least seventeen occasions, from March through August 1973, Wilcox purchased cattle from Rice using a check delivered one week later drawn on Davis' account. Several times the amount was left blank and Wilcox simply wrote in the purchase price. On August 31, 1973 Wilcox purchased seventy-four head of cattle for $18,710.23 at the Rice sale barn for which payment was not received. On September 4, 1973 Wilcox purchased an additional thirty-seven head of cattle from Rice for $13,166.36. These cattle were consigned to Davis and were sold by Davis the next day. The proceeds were applied by Davis to a debt owed by Wilcox to Davis. Inconsistent with the practice of the previous six months, neither Wilcox nor Davis paid for these purchases. (Davis retained the proceeds without notice to Rice.) At this point Rice stopped the purchasing arrangement and on September 24 Rice filed a reparation proceeding with the Packers and Stockyards Administration seeking an award of reparation from Wilcox and Davis for the sale price of the cattle, $31,876.59, plus additional damages. Ultimately an order of reparation was entered by the Secretary ordering Davis and Wilcox to pay Rice $13,166.35. Wilcox was separately ordered to pay Rice an additional $18,710.23.[2]
 
 
 7
 The hearing officer concluded that Wilcox was not Davis' agent and that Davis was merely lending money to Wilcox. He also concluded that the sales were for cash even though payment was delayed one week. In spite of his finding that Wilcox was not the agent of Davis, the hearing officer found Davis jointly and severally liable for the $13,166.35 purchase of cattle on September 4, 1973. This finding was based on the grounds that the nonpayment of the debt was an unjust practice in violation of 7 U.S.C. § 208 because Davis had made a practice of honoring those debts of Wilcox. The hearing officer concluded that Davis knew or should have known that the cattle had not been paid for by Wilcox, that he had not notified Rice prior to the sale of his intention to not loan money to Wilcox for the purchase, and that he nevertheless retained the proceeds of the sale.
 
 II. Issues Presented
 
 8
 There are two basic issues presented in this case: first, whether the Secretary of Agriculture has jurisdiction to hear cases of this type; second, if there is jurisdiction, whether the Secretary of Agriculture erred in finding Davis liable for Wilcox's purchase.
 
 
 9
 A. Jurisdiction of the U.S.D.A.
 
 1. Standard of Review
 
 10
 The first step when reviewing the Secretary's determination of jurisdiction, is to ascertain the appropriate standard of review to be used. Because jurisdiction is an issue of law, the court reviews the agency determination de novo.
 
 
 11
 The A.P.A. directs courts to review findings of law de novo.
 
 
 12
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.
 
 
 13
 5 U.S.C. § 706. Thus, treating this case "like other civil suits," we shall review the Secretary's findings of law "de novo." However, findings and orders of the Secretary shall be prima facie evidence of the facts stated.
 
 
 14
 Such suit in the district court shall proceed in all respects like other civil suits for damages except that the findings and orders of the Secretary shall be prima facie evidence of the facts therein stated, * * *.
 
 
 15
 7 U.S.C. § 210(f) (emphasis added).
 
 
 16
 The controversy concerning jurisdiction centers upon 7 U.S.C. § 208(a)
 
 
 17
 (a) It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful. (emphasis added).
 
 
 18
 There are at least two ways of interpreting this provision. The first reads the phrase "and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful" literally and without reference to the first portion of the subsection referring to stockyard services. This would give the Secretary a broad grant of authority to prohibit nearly "any" discriminatory regulation or practice.
 
 
 19
 A second interpretation would link the two portions of the section together, so only "unjust, unreasonable, or discriminatory stockyard services" would be prohibited. This would severely restrict the Secretary's ability to deal with practices not directly connected with stockyard services.
 
 
 20
 The Secretary contends that all entities regulated under Title II of the original Act, stockyard owners, market agencies and dealers are amendable to reparation orders. This gives full force and effect to 7 U.S.C. § 209 which makes dealers as well as stockyard owners and market agencies liable for damages to injured persons.
 
 2. Discussion
 
 21
 The justification for the broader grant of authority is based generally on the purposes of the Act. This circuit held in Bruhn's Freezer Meats, Inc. v. USDA, 438 F.2d 1332 (8th Cir. 1971) that "the Packers and Stockyards Act is remedial legislation and should be liberally construed to further its life and fully effectuate its public purpose." Id. at 1336. This circuit has also held that:One of the purposes of this act was to protect the owner and shipper of live stock, and to free him from the fear that the channel through which his product passed, through discrimination, exploitation, overreaching, manipulation, or other unfair practices, might not return to him a fair return for his product.
 
 
 22
 United States v. Donahue Bros., Inc., 59 F.2d 1019, 1023 (8th Cir. 1932). These directives are reinforced by the Supreme Court's holdings in Denver Union Stock Yard Co. v. Producers Livestock Marketing Association, 356 U.S. 282, 286, 78 S.Ct. 738, 741, 2 L.Ed.2d 771 (1958) and Stafford v. Wallace, 258 U.S. 495, 513-15, 42 S.Ct. 397, 401, 66 L.Ed. 735 (1922).
 
 
 23
 Such statements indicate that the statute should be broadly construed to give the Secretary of Agriculture the authority to deal with any practices that inhibit the fair trading of livestock by stockyards, market agencies, and dealers. In light of the goals furthered by such interpretation and the case law that supports it, we hold the Secretary is not confined to "unjust, unreasonable, or discriminatory" regulations or practices connected only with stockyard services, but rather he has jurisdiction to deal with "every unjust, unreasonable, or discriminatory regulation or practice" involved in the marketing of livestock. To hold otherwise would retreat from the statute's recognized purpose.
 
 
 24
 The Secretary has long followed this interpretation.[3] While we do not necessarily defer to the Secretary's interpretation, congressional acquiescence in this long-standing practice indicates its approval. Furthermore, to interpret the phrase as merely a recognition of the prohibition and unlawfulness of unjust, unreasonable, or discriminatory stockyard regulations and practices would make the phrase wholly redundant in light of 7 U.S.C. § 209 which provides that any stockyard owner, market agency, or dealer who violates any of the provisions of 7 U.S.C. §§ 205-08 shall be liable to those injured for the damages thereby inflicted.[4]
 
 
 25
 Our interpretation of 7 U.S.C. § 208(a) is consistent with Hays Livestock Commission Co. v. Maly Livestock Commission Co., 498 F.2d 925 (10th Cir. 1974). The facts of Hays are very similar to the present case. In Hays, the operators of a stockyard agreed to cover the drafts of a dealer. This practice continued for approximately one year, and then without warning, the stockyard dishonored the drafts. The Secretary of Agriculture held against the stockyard owner and found that this was an unfair practice. The Tenth Circuit affirmed the district court and held that the Secretary of Agriculture had jurisdiction to deal with such a practice. Id. at 928-32.
 
 
 26
 Our holding is also consistent with Neugebauer v. Ryken, 34 Agric.Dec. 1712 (D.S.D. 1975) wherein Chief Judge Nichol held that the Secretary has the power to adjudicate a claim based on misrepresentations made with respect to cattle sold in an auction. The court held that Congress did not intend to change or alter those remedies existing at common law or by statute, but that the remedies under the Act were intended to be in addition to other remedies.
 
 
 27
 Appellants contend that two opinions run contrary to our interpretation of the Act, citing, Guenther v. Morehead, 272 F.Supp. 721 (S.D. Iowa 1967) and McClure v. E. A. Blackshere Co., 231 F.Supp. 678 (D.Md. 1964). Guenther can be distinguished however. It dealt with the dishonoring of a stock buyer's draft by the party who had directed the dealer to buy the cattle. Judge Hanson did not find that the Secretary lacked jurisdiction to deal with unjust, unreasonable, or discriminatory regulations or practices in general. Rather his reversal of the Secretary was based on the factual determination that the single transaction involved in the case did not constitute a practice. Id. at 726-28.
 
 
 28
 The Maryland district court in Blackshere did hold, however, that "only such unjust, unreasonable, or discriminatory regulation(s) or practice(s) 'in respect to the furnishing of stockyard services' " (emphasis added) are covered by 7 U.S.C. § 208(a). McClure v. E. A. Blackshere Co., supra, 231 F.Supp. at 681-82. As noted earlier, we do not think Congress intended to so restrict the Secretary's jurisdiction. Like our brethren in the Tenth Circuit, we decline to follow Blackshere to the extent that it is not distinguishable from the case at hand. See Hays Livestock Commission Co. v. Maly Livestock Commission Co., supra, 498 F.2d at 931-32.
 
 
 29
 B. Whether Nonpayment Constitutes an Unfair Practice
 
 
 30
 Turning to the question of whether the nonpayment constituted an unfair practice, the court observes a different standard of review. The standard provided in 7 U.S.C. § 210(f) states "the findings and orders of the Secretary shall be prima facie evidence of the facts therein stated * * *."
 
 
 31
 In reviewing the action of the Secretary we apply the "substantial evidence" on the record standard of 5 U.S.C. § 706(2)(E). Western Iowa Farms Co. v. Bergland, 629 F.2d 502 (8th Cir. 1980); Lewis v. Butz, 512 F.2d 681, 683 (8th Cir. 1975); Glover Livestock Commission Co. v. Hardin, 454 F.2d 109, 110-13 (8th Cir. 1972), rev'd on other grounds, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); Capital Packing Co. v. United States, 350 F.2d 67, 72 (10th Cir. 1965); Williams v. Haurigan, 244 F.Supp. 478, 480-82 (D.S.D. 1965). We are satisfied the facts stated in the findings and orders of the Secretary are supported by substantial evidence.
 
 
 32
 Our holding does not ignore the dispute surrounding the definition of a "practice" within 7 U.S.C. § 208(a). The case law demonstrates and the parties concede that an isolated instance does not constitute a practice. Hays Livestock Commission Co. v. Maly Livestock Commission Co., supra, 498 F.2d at 930-31; Guenther v. Morehead, supra, 272 F.Supp. at 726; McClure v. E. A. Blackshere Co., supra, 231 F.Supp. at 680-82. However, the present case does not involve an "isolated instance." In Hays Livestock Commission Co. v. Maly Livestock Commission Co., supra, 498 F.2d at 930-32, the Tenth Circuit was satisfied that after establishing a practice of honoring drafts, the dishonoring of three drafts constituted an unjust and unreasonable practice in violation of the Act, 7 U.S.C. § 208. In the instant case, after honoring seventeen drafts, two drafts were dishonored. As in Hays, there was sufficient recurrence to establish a "practice." In so holding we emphasize that isolated transactions do not constitute a practice.
 
 
 33
 Perhaps more important to this issue is the fact that in both Hays and the present case there was a history of covering the drafts, thus luring an innocent party relying on the representations into accepting the drafts. This is what distinguishes this case from an isolated act of dishonoring the draft as was the case in Guenther. Thus, the present case involves the purposeful extension of credit, the encouragement of reliance on the drafts through the party covering them at least seventeen times within a six month period, then, dishonoring two of them without warning and with knowledge that the seller had not been and would not be paid. This holding does not make the Secretary a simple collection agency, something which the courts have steadfastly refused to sanction.[5] Rather, it is acting to stop a deceptive practice of honoring drafts and then without notice refusing to honor the drafts, inflicting great harm on the seller. We agree with Chief Judge Nichol that the purposes of the Act are not served by interpreting the term "practice" to require several acts of dishonoring checks. Neugebauer v. Ryken, supra, 34 Agric.Dec. at 1715-17.
 
 
 34
 We are satisfied the district court properly held that the actions of the Secretary should be affirmed and judgment entered accordingly.
 
 
 35
 Affirmed.
 
 
 
 [1]
 The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 The hearing officer found that notwithstanding that Wilcox was not registered under the Act he was a dealer as defined in the Act (7 U.S.C. § 201) because of his activities. The hearing officer then determined that the failure by Wilcox to pay for the livestock he purchased from Rice on August 31, 1973 and September 24, 1973 constituted an unjust practice in violation of the Act on the basis of which reparation should be awarded. He further found that it was an unjust practice in violation of 7 U.S.C. § 208 for Davis to retain the proceeds of the sale of cattle in payment of Wilcox's debts owed to him with knowledge that the cattle were bought by Wilcox and for which Davis had not been paid, or "with timely notice of sufficient facts to cause a reasonably prudent person to make a further investigation to ascertain whether there was an adverse interest in the cattle."
 
 
 [3]
 Lizer v. Peters, 29 Agric.Dec. 402, 406-07 (1970)
 
 
 [4]
 7 U.S.C. § 209 provides:
 (a) If any stockyard owner, market agency, or dealer violates any of the provisions of sections 205-207 or 208 of this title, or of any order of the Secretary made under sections 201-203 and 205-217a of this title, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.
 (b) Such liability may be enforced either (1) by complaint to the Secretary as provided in section 210 of this title, or (2) by suit in any district court of the United States of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.
 
 
 [5]
 Federal courts have been at pains to point out that the Packers and Stockyards Act did not make the Secretary a collecting agency. More specifically, the Act was not designed to provide a remedy for every worthless check or dishonored draft
 Hays Livestock Comm. Co. v. Maly Livestock Comm. Co., supra, 498 F.2d at 930.
 See, e.g., Guenther v. Morehead, supra, 272 F.Supp. at 726; McClure v. E. A. Blackshere Co., supra, 231 F.Supp. at 680-82.