Dean ROWSE and Helen Rowse, Plaintiffs,

v.

PLATTE VALLEY LIVESTOCK, INC., a Nebraska corporation, Defendant.

No. CV84–L–227.

United States District Court, D. Nebraska.

Nov. 1, 1984.

.Richard A. Koehler, Geneva, Neb., for plaintiffs.

· Robert M. Cook, Norfolk, Neb., for defendant.

Sally Johnson, Asst. U.S. Atty., Lincoln, Neb., for intervenor United States of America.

### MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

URBOM, Chief Judge.

The plaintiffs are seeking by this lawsuit to enforce a reparations order issued in their behalf by the Secretary of Agriculture under § 309 of the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. § 210. The plaintiffs have filed a motion for summary judgment, filing 9, and the defendant has filed a motion to dismiss, filing 14. Because it affects the jurisdiction of this court, I shall address the defendant's motion first.

The defendant is a market agency selling livestock on commission and operating a posted stockyard at Gering, Nebraska. As such, it is registered with the Secretary of Agriculture under the Packers and Stockyards Act and is subject to the provisions of the Act and regulations promulgated under its authority. The plaintiffs filed a

reparation complaint with the Secretary of Agriculture on March 13, 1980. On February 3, 1984, the office of the Secretary issued a decision and order finding that the defendant had engaged in an unjust practice prohibited by the second clause of § 307(a) of the Act, 7 U.S.C. § 208(a), and awarding to the plaintiffs the net proceeds from the sale by the defendant of 108 cows ($57,184.33) and the defendant's commission on the sale ($692.80), a total of $57,877.13, plus interest thereon at 13 per cent from April 1, 1980, until paid. The defendant has paid no part of that award.

■ The jurisdiction of this court is based upon the jurisdiction of the Secretary to have entertained the complaint in the first instance. The jurisdiction of the Secretary is an issue of law to be reviewed de novo here, 5 U.S.C. § 706, but the findings and orders of the Secretary are prima facie evidence of the facts stated, 7 U.S.C. § 210(f). Otherwise, the suit "shall proceed in all respects like other civil suits for damages." *Id.* In reviewing the findings and orders of the Secretary, the substantial-evidence-on-the-record standard of 5 U.S.C. § 706(2)(E) applies. *Rice v. Wilcox,* 630 F.2d 586, 591 (C.A. 8th Cir.1980).

The defendant contends that the Secretary lacked jurisdiction, because the transaction for which the plaintiffs seek damages was an "isolated instance" which does not constitute a "practice" within the meaning of 7 U.S.C. § 208(a). Section 208(a) provides:

"It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful."

The United States, which has intervened to defend the Secretary's jurisdiction, argues that Congress intended that a "practice," under the second clause, be read to mean a course of conduct of the industry as a whole rather than a course of conduct

of a particular respondent. The defendant cites *Rice v. Wilcox,* supra, at 591, in which the court said, "we emphasize that isolated transactions do not constitute a practice."

One way to read *Rice* is to say that it sets an "every dog gets one free bite" rule. In that case Wilcox purchased cattle from Rice seventeen times over a six-month period by paying for the cattle one week after the sale with checks drawn on the account of Davis, to whom Wilcox consigned the cattle for sale; each time Davis honored the checks. Then Wilcox made two more purchases of cattle from Rice, but neither Wilcox nor Davis paid Rice for the cattle; after Davis sold the cattle on consignment, he retained the proceeds to satisfy Wilcox's debt to him, even though Davis knew that Rice had not been paid. The Secretary found that both Wilcox's failure to pay for the cattle and Davis' retention of the sale proceeds and nonpayment of the debt after making a practice of honoring Wilcox's debts to Rice were unjust practices under 7 U.S.C. § 208. The appellate court affirmed the district court's decision sustaining the reparation orders. Although it said that an isolated transaction is not a practice, the court observed that several acts of dishonoring checks are not required and that dishonoring two drafts after inducing Rice's reliance upon Davis' history of extending credit to cover Wilcox's purchases was a deceptive practice within the Secretary's authority to stop.

The reasoning laid out in *Rice* leaves unclear whether the "practice" was the entire course of action, including honoring 17 checks, or was the two instances of dishonoring checks. The latter was the unfair practice found by the Secretary and upheld by the actual holding of the case. Unless the court believed that honoring the first 17 was deceptive because Davis intended all along to dishonor the last two, which I doubt, then the unfair practice was connected with the last two. Because the court said an isolated transaction was insufficient for a practice, it must have meant either that two unfair transactions do constitute a practice, regardless of the

context of prior fair transactions, or that one or two transactions become a practice when they derive their unfairness from the defendant's abrupt change of a previous course of conduct on which the plaintiff has relied to his detriment. I believe the latter is the proper explanation for the *Rice* result, and the court was not consciously adopting a "one free bite" rule. Rather the court was giving a broad reading to the power of the Secretary to protect cattle sellers while heeding the idea that the Packers and Stockyards Act was not meant to make the Secretary a collecting agency or provide a federal administrative remedy for every worthless check or dishonored draft. *Id.* at 591 n. 5.

▉ The policy from *Rice* applies to the present facts, although those facts are distinguishable. For purposes of the motion to dismiss, the facts alleged by the plaintiff, in this case the findings of the Secretary, must be taken as true. The Secretary's decision indicates that the defendant's application of a portion of the net sale proceeds to satisfy a debt owed by the dealer to the defendant when the dealer had not paid the plaintiff was not an isolated transaction on the part of the defendant, although the defendant may not have had a related transaction with the plaintiff. On January 19, 1980, the defendant had sold 159 head of cattle consigned to it by the same dealer, Ken Kaba, and retained a portion of the net sale proceeds to pay a debt owed it by Kaba and gave Kaba a check for the balance. Shortly after that the sellers of the cattle, the Rezac brothers, informed the defendant that Kaba had not paid them. The defendant stopped payment of the check to Kaba and on February 28, 1980, paid the Rezacs the full net proceeds of the January 19 consignment sale. Meanwhile, on February 16, 1980, Kaba and the plaintiffs agreed to the sale of 108 cows, which Kaba picked up on February 20 and 21. Kaba gave the plaintiff two checks in payment on February 21, and the Rowses deposited them into their account the next day. The defendant sold the Rowse cattle on February 27; at this time the president of the defendant knew

that Kaba had bought the cattle from Dean Rowse and that Kaba had recently failed to pay for livestock purchased from the defendant, from Dennis Rezac, and from Dale Van Wyk. The next day, the same day that the defendant paid the proceeds of the sale of the 159 steers to the Rezacs, the defendant, with Kaba's knowledge, paid a portion of the net sale proceeds from the Rowse cattle to itself to satisfy a debt owed it by Kaba and paid the rest to Van Wyk to satisfy Kaba's debt to him. On March 3 the Rowses learned that the Kaba checks to them were being returned for insufficient funds.

The case of *Mid-South Order Buyers, Inc. v. Platte Valley Livestock, Inc.,* 210 Neb. 382, 315 N.W.2d 229 (1982), is crucial to the question of whether the present defendant's action was a "practice" under section 208, not because of the legal principle applied in that case, but because of the facts found by the state court. As the Secretary found in the present case, the defendant here also was the defendant in *Mid-South.* In that case, the plaintiff sold cattle to a dealer, Tige Enterprises, in three lots, but received no payment. Tige consigned the cattle to Platte Valley, and they were sold. Platte Valley then paid the proceeds to itself to cover a debt owed it by Tige, although Mid-South had already informed Platte Valley that Tige had not paid for the cattle. This occurred in 1973. Seven years later, according to the Secretary's decision, Platte Valley did the same thing to the Rowses.

Even under the narrowest reading of *Rice v. Wilcox,* the defendant already has had its free bite, either in the Mid-South transaction in 1973 or in the Rezac transaction in 1980, and the repetition makes it a "practice." However, it is notable that *Rice* cited *Neugebauer v. Ryken,* 34 Agric. Dec. 1712 (D.S.D.1975), for the proposition that several acts of dishonoring checks are not necessary. In discussing this point, the Supreme Court of Nebraska in *Mid-South* noted that *Neugebauer* involved a single transaction involving a misrepresentation and quoted the portion of the decision that

distinguished nonpayment of bills as a mere part of the "ordinary debtor-creditor relationship," which is unlike a misrepresentation about the breed of cattle, the latter being " 'inextricably within the term of "furnishing stockyard services." ' " 210 Neb. at 393, 315 N.W.2d at 235. The Nebraska court concluded that "[t]he term 'practice' may involve a single transaction if the unjust or unreasonable practice is among the evils the Packers and Stockyards Act was intended to remedy." *Id.*, at 393–394, 315 N.W.2d at 235. In this light it is apparent that the two transactions in *Rice*, when taken in the context of the past dealings between the parties and the reliance the seller developed on that manner of doing business, were among the evils the act was intended to remedy, and this would still be true even if there had been only one instance of refusing to cover the dealer's check.

In the present case, the defendant's alleged action was not merely an aspect of the debtor-creditor relationship. Rather, it was an instance of a regulated stockyard market agency violating regulations promulgated to carry out the purposes of the act. Under 9 C.F.R. § 201.39(a), market agencies are prohibited from paying net proceeds from livestock consignment sales to anyone other than the consignor or shipper, with certain listed exceptions. The only exception relevant here is that the market agency may pay proceeds to a person it has reason to believe is the owner of the livestock. Also, § 201.42 provides that the proceeds of consignment sales are trust funds in the hands of the market agency and must be deposited into a custodial account and paid only as provided in the regulation. Neither regulation authorizes the market agency to pay consignment sale proceeds to itself to satisfy a debt of the consignor or to another debtor of the consignor. *Mid-South Order Buyers, Inc. v. Platte Valley Livestock, Inc.*, 210 Neb. 382, 385, 394, 315 N.W.2d 229, 231, 235 (1982).

Therefore, unlike a single instance of a breach of the debtor-creditor relationship, an evil not targeted by the Packers and Stockyard Act, the transaction here, even if viewed as a single transaction, is a practice which Congress intended to reach and regulate under the Act. Unlike a bad-check transaction, it is not an isolated instance because, according to the Secretary's decision, it is part of an industry-wide practice intended to be reached by the Act. In addition, assuming the truth of the matters stated in the petition and the reparation order, the transaction involving the Rowses was part of a practice by the defendant. The Secretary had the power to consider the plaintiff's reparation complaint, and this court has jurisdiction to review the Secretary's action. The defendant's motion to dismiss the complaint is denied.

The plaintiff's motion for summary judgment requires consideration of evidence outside the pleadings. The United States submitted, but did not file, a certified copy of the Secretary's decision and order in *Dean Rowse and Helen Rowse v. Platte Valley Livestock, Inc.*, P. & S.Doc. No. 5778 (Feb. 3, 1984), a copy of which also is attached to the plaintiff's original complaint in this court. Received in the judge's office, but not filed by the clerk, as attachments to the defendant's brief in opposition to the plaintiff's motion for summary judgment were an affidavit of Gene Lenhart, a copy of the USDA hearing transcript, a copy of the respondent's brief before the Secretary, and a copy of a memorandum and order in *Lane v. Sohler*, from the United States District Court for the District of Montana. Counsel for the defendant has told the court that he sent the latter group of materials to the clerk's office in Omaha for filing, but that the clerk apparently took them to be part of the brief, which would not be filed, and forwarded them to the judge's office without filing them. Counsel for the plaintiffs and defendant have agreed that the court may consider these copies in deciding the summary judgment motion, despite noncompliance with the local rule requiring that such documents be filed with the clerk at the time of the motion or the response to the

motion. Therefore, the decision and order, the hearing transcript, and the Lenhart affidavit will be made part of the court file in this case. The court decision and brief are not evidence relevant to any issue in this case and will not be filed, but will be considered as part of the defendant's argument.

By statute, the findings and order of the Secretary are to be taken as prima facie evidence of the facts stated therein. 7 U.S.C. § 210(f). I agree with the Nebraska Supreme Court that the standard of review under this statute in the summary judgment context is the same as that under the similar provisions of the Interstate Commerce Act, as described in *ICC v. Atlantic Coast Line R. Co.*, 383 U.S. 576, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966). In *Mid-South* the court said about the *Atlantic Coast Line* case:

> "The Court there held that the commission's findings on issues other than primary jurisdiction issues 'are subject to review under the prima facie evidence provision of § 16(a), with the statutory rights of introducing evidence not before the Commission and obtaining a jury determination of disputed issues of fact.' *Id.* at 594, 86 S.Ct. at 1011. The Court continued in a footnote: 'Section 16(2), of course, does not limit the carrier to introducing opposing evidence to rebut the prima facie effect of the Commission's order. It may also challenge the admissibility of the order on the grounds, for example, that the Commission did not afford the carrier a fair hearing or that the order was not based upon substantial evidence .... But if a Commission order containing findings on all matters essential to the shipper's recovery is admitted and the carrier produces no opposing evidence, the findings and order of the Commission may not be rejected by the jury and the shipper is entitled to judgment.' *Id.* at 594, 84 S.Ct. at 1011."

210 Neb. at 395, 396, 315 N.W.2d at 236. The Nebraska court affirmed a summary judgment for the plaintiff where the trial court had received on the motion not only the order and findings of the Secretary, but also the record of the entire hearing before the U.S.D.A. examiner, at which both parties presented evidence without restriction, and where the defendant did not offer to the trial court any additional contradictory evidence or seek a further evidentiary hearing. *Id.*

The evidentiary status of the present motion is identical, except that the defendant has offered the affidavit of its president, Gene Lenhart, to contradict certain of the Secretary's findings. The defendant also contends that the Secretary's order is inadmissible because it was not based on substantial evidence.

Whether the plaintiffs have carried their burden of establishing initially the nonexistence of any genuine issue of material fact depends on the admissibility of the findings and order of the Secretary. If admissible, the Secretary's decision would satisfy the plaintiffs' burden as the moving party, and it would then become the responsibility of the defendant to show that a fact issue does indeed exist. *See Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir.1943). Also, it is within the court's power to grant summary judgment against the moving party, despite the lack of a cross-motion, where the party against whom the judgment is entered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried and where the party for whom judgment is rendered is entitled thereto as a matter of law. Rule 54(c), Federal Rules of Civil Procedure; 6 *Moore's Federal Practice* ¶ 56.12 (2d ed. 1983).

Thus, the first task is to test whether the Secretary's findings are supported by substantial evidence in the record and whether the reparation order is consistent with the law. For this purpose, it is necessary to distinguish between the damages awarded by the Secretary, which the plaintiffs seek in their first cause of action, and those that go beyond the reparations order, which they seek in their second cause of action. Logically, the plaintiff cannot benefit from

the rules regarding the evidentiary status of the Secretary's decision when matters not addressed by the Secretary are at issue, except to the extent that the Secretary's findings settle factual issues common to both claims. Other than the decision and the transcript of the administrative hearing, there is no evidence in the record to show the plaintiffs' entitlement to the damages claimed under the second cause of action.

■ Two problems immediately come to mind to stand in the way of granting the plaintiffs' summary judgment motion concerning the second cause of action. First, neither party has addressed the legal issue of whether additional damages may be awarded as part of a suit brought to enforce a reparations order under the Packers and Stockyards Act, *see Crain v. Blue Grass Stockyards Co.*, 399 F.2d 868 (6th Cir.1968), leaving a question as to this court's jurisdiction over the second cause of action. (Although the defendant did not raise this objection in its motion to dismiss, lack of subject matter jurisdiction is a defect in the court's power to act, which may not be waived by the parties.) Viewing the question in a different light, there also has been no argument on whether the court has the power to modify the reparations order so as to increase the award of the Secretary on the basis of evidence considered during the administrative proceedings. Second, the plaintiffs have alleged no ground for relief under the second cause of action other than a violation of the Packers and Stockyards Act. Having raised these questions, I will leave them open until the parties have a further opportunity to address them. Therefore, the motion for summary judgment will be denied as it concerns the claim in the second cause of action for actual interest on capital borrowed to replace the proceeds of the sales to Kaba, which the plaintiffs did not receive because of insufficient funds in Kaba's bank account to cover his checks. However, the portion of the second cause of action seeking recovery of legal expenses has been briefed by the parties and will be addressed here.

■ It is a tenet of judicial review of administrative decisions that "[w]hen faced with a problem of statutory construction" courts are bound to give "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). This principle applies to the problem of fleshing out the meaning of the § 208 prohibition of "every unjust, unreasonable, or discriminatory regulation or practice" with respect to the furnishing of stockyard services. *Hays Livestock Commission Co. v. Maly Livestock Commission Co.*, 498 F.2d 925, 930 (10th Cir.1974). The Secretary's interpretation of the facts, to the effect that the defendant engaged in an unjust and unreasonable practice violative of § 208, is to be accorded great deference if the factual findings are supported by substantial evidence. *Id.* at 931. As the court noted in *Hays Livestock*, this level of deference arises because the statute fails to define the critical phrase, leaving its meaning to " 'be determined by the facts of each case within the purposes of the Packers and Stockyards Act,' " and because " 'the responsibility for efficient regulation of market agencies and packers lies with the Secretary of Agriculture ....' " *Id.* at 930 (quoting *Capitol Packing Co. v. United States*, 350 F.2d 67, 72, 76 (10th Cir.1965)).

■ Having set out the standard of review, I must now refrain from applying it. In order to test whether the findings and order of the Secretary are supported by substantial evidence in the record, I must have before me the complete record. All that the court file contains at this point is a copy, not certified, of the transcript of hearings in this matter before a presiding officer of the USDA on September 15 and 16, 1981. The transcript refers to several exhibits admitted into evidence at the hearing, as well as an investigative file of the Department. Frequently the testimony referred to the exhibits and investigative file documents, and counsel on both sides often

objected to questions that referred to the documents on the ground that the exhibit speaks for itself. None of these exhibits nor the investigative file is on file in this court. Rather than search the incomplete record for substantial evidence, I will deny the plaintiff's motion as to the first cause of action for lack of proof at this time. *See Vance v. Reed,* 495 F.Supp. 852, 856–57 (M.D.Tenn.1980).

There are two matters concerning the summary judgment motion that stand on a somewhat different footing. The Secretary's reparation order of February 3, 1984, awarded 13 percent interest on the principal·sum from April 1, 1980. The plaintiffs' first cause of action seeks to enforce the entire award, including the pre-award interest—the interest sought in the second cause of action is the excess of the interest actually paid by the plaintiffs on a bank loan procured to replace the sum they lost on the dishonored Kaba checks over the Secretary's interest award. Also, the second cause of action seeks legal expenses alleged to have been incurred, for the most part during the period before the Secretary's order was issued, as a result of the defendant's violation of the Packers and Stockyards Act.

The plaintiff has failed to cite any legal basis for the Secretary's award of what amounts to prejudgment interest. The defendant cites Nebraska case law, repeating the state's restrictive rule on prejudgment interest, and an unpublished opinion from the federal trial court in Montana, which struck down the pre-award interest component of a Packers and Stockyards Act reparation award, not on the ground that there was no legal authority to award prejudgment interest, but because the precise amount owed to the plaintiff "was difficult to ascertain." Yet to be addressed are the difficult issues of what law applies to the award of prejudgment interest as a component of damages in a Packers and Stockyards Act reparation order enforcement proceeding and how that law would apply to the facts of the present case, once the entire record is available to determine what facts are supported by substantial evidence. Thus, the plaintiffs have failed to carry their burden of showing entitlement to the interest award, and the defendant has failed to show it would be entitled to a sua sponte partial summary judgment on the prejudgment interest issue.

▮ The legal expenses sought in the second cause of action—as opposed to the attorney fees sought in paragraph C of the prayer for relief—are alleged to have been incurred during two periods. The first is from some undesignated starting date through February 5, 1982; the second from February 5, 1982, through February 6, 1984, the latter date being three days after the issuance of the Secretary's decision and order. The significance of neither date is apparent. However, what is clear is that section 309(f) of the Packers and Stockyards Act, 7 U.S.C. § 210(f), authorizes the award of only those legal expenses incurred as part of the cost of the suit in district court to enforce the reparation order and precludes recovery of attorney fees incurred in the reparation proceedings before the Secretary or in a collateral suit to enjoin the Secretary's order. *Hays Livestock Commission Co. v. Maly Livestock Commission Co.,* 498 F.2d 925, 933 (10th Cir.1974). While it is conceivable that some portion of the claimed legal expenses incurred in the three days after the Secretary's order could be proven to be related to the present enforcement suit rather than the reparation proceedings, the portion of the legal expenses that were incurred in the reparation proceedings before the Secretary may not be recovered.

THEREFORE, IT IS ORDERED:

1. That the clerk file the following documents accompanying this memorandum and order:

   a. The transcript of the hearing before the United States Department of Agriculture in the matter of Dean Rowse and Helen Rowse v. Platte Valley Livestock, Inc., Docket No. 5778, dated September 15 and 16, 1981;

b. The certified copy of the Decision and Order issued February 3, 1984, in Dean Rowse and Helen Rowse v. Platte Valley Livestock, Inc., P. & S. Docket No. 5778;

c. The affidavit of Gene Lenhart, dated July 25, 1984, entitled "Affidavit in Support of Defendant's Brief in Opposition to Plaintiffs' Motion for Summary Judgment";

2. That the defendant's motion to dismiss on the ground of lack of subject matter jurisdiction, filing 14, is denied;

3. That the plaintiffs' motion for summary judgment is denied;

4. That the defendant is granted partial summary judgment against that portion of the second cause of action of the plaintiffs' amended complaint which seeks to recover legal expenses incurred in the reparation proceedings before the Secretary of Agriculture.